

09-02501-D
COMPLAINT
PLAINTIFF: JO VASSALLO
DEFENDANT: JP MORGAN CHASE BANK
JUDGE: HON. R. BARDWIL
RELATED CASE: 08-37113
------------------------------
FILED 8/3/09 - 12:59 PM
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION     rals

Jo Ann Vassallo, Plaintiff, Pro Se
9060 Stockhorse Lane
Granite Bay, CA 95746
Telephone: 916-791-0630

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

JO ANN VASSALLO,

      Plaintiff,

v.

JPMORGAN CHASE BANK,
formerly WASHINGTON MUTUAL
HOME LOANS

      Defendant;

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR LONG
BEACH MORTGAGE LOAN TRUST
2005-WL1

      Defendant.

Adversary Proceeding No.
Bankruptcy Case No. 08-37113-D-7

**ADVERSARY PROCEEDING
COMPLAINT AND
POINTS AND AUTHORITIES**

### *Factual background:*

The Foreclosure that is the subject of this Adversary Proceeding was initiated by a Notice of Trustee's Sale issued and recorded by Deed of Trust assignee Deutsche Bank National Trust Company as Trustee for Long Beach Mortgage Loan Trust, 2005-WL1 (hereinafter referred to as Deutsche Bank) on July 11, 2008. Deutsche Bank is Deed of Trust Assignee for JPMorgan Chase Bank, formerly Washington Mutual Home Loans. On 23 December 2008, Plaintiff added Deutsche Bank to the Master Verification List, as Washington Mutual Home Loans assigned the Deed of Trust for Plaintiff's residence, the subject property, to Deutsche Bank well before the foreclosure on 11 November 2008.

This Complaint seeks relief from the following damages caused by the Defendants.

*Plaintiff hereby provides facts and case law that constitute the causes of action:*


*1. Defendant JPMorgan Chase Bank, formerly Washington Mutual Home Loans (Lender), failed to act according to the contractual Presumption of Good Faith by failing to addressing two well-above-market Offers to Purchase Plaintiff's residence.*
The two Offers ($800,000 cash and $650,000) were provided to Lender as stated below:

1. 6/4/08 Washington Mutual fax number 1-469-549-5608: $650,000 offer
2. 6/5/08 ROGER SANTOS, Loss Mitigator (fax) 1-818-775-2411: [same $650,000]
3. 6/20/08 ROGER SANTOS, Loss Mitigator (fax) 1-818-775-2411: $800,000 cash
4. 7/21/08 MARCUS MILLER, Loss Mitigator (fax) 1-469-948-9930: [same] $800,000


Both buyers were able to close the sale within three weeks of opening escrow. The $800,000 Offer may have made possible a Deed in Lieu, rather than a short sale. In September 2008, Plaintiff also provided both Offers in a Loss Mitigation package to Lender and Movant, attorneys for Lender. [Exhibit A provides the package: Lender's Short Sale and Borrower Assistance assertions and two Offers dated June 2008.]

Liquidating the property in a market sale rather than foreclosure minimizes deleterious effects of Plaintiff's residential property loss, and greatly increases Plaintiff's ability to restore good credit. Both Offers met the "fair and equitable" provision for Creditors, securing more for the property than the Creditor's appraisal. A market sale would also have protected Plaintiff's dependents, who attended high school in the immediate area. As of September 2008, Movant attorneys (and subsequently McCarthy & Holthus, LLP, attorneys for Lender) were unaware of Offers on the property. Under Plaintiff's Chapter

11 case, prior to dismissal without prejudice to re-file under Chapter 13 or 7, an Order to

Show Cause Hearing was set for 25 November 2008 to determine why Lender was

unresponsive, and to hear Plaintiff's Motion for Denial of Relief from Stay.

Additionally, Exhibit B provides correspondence from Lender, which illustrates

inability of that entity to receive and administer according to Loss Mitigation assertions.

### 2. Defendants violated the legal framework governing Power of Sale foreclosure.

Plaintiff received only after-the-fact informal sale notification on 19 November 2008,

by Lender's Keller Williams agent, who stated that he thought the property was vacant.

### 2.1 Defendants would have had to comply with the legal framework governing non-judicial foreclosures in California, and foreclosure provisions under 12 U.S.C., Chapter 38A, Section 3758 (1) (2) and (3), for the foreclosure to be legally binding.

```
2924.(a)(3) After the lapse of the three months described in paragraph
(2), the mortgagee, trustee or other person authorized to take the
sale shall give notice of sale, stating the time and place thereof,
in the manner and for a time not less than that set forth in Section
2924f.
2924f.(a) As used in this section and Sections 2924g and 2924h,
"property" means real property or a leasehold estate therein, and
"calendar week" means Monday through Saturday, inclusive.
  (b)(1) Except as provided in subdivision (c), before any sale of
property can be made under the power of sale contained in any deed of
trust or mortgage,... A copy of the notice of sale shall also be
posted in a conspicuous place on the property to be sold at least 20
days before the date of sale, where possible and where not restricted
for any reason.
```

The law is very clear regarding **"notice of sale, stating the time and place thereof."**

Notice of time and place of sale was not given. The initial August 8, 2008, sale date had

been interrupted, with no posting of notice of sale. The legal process remained

incomplete and no notice was posted for the November 10, 2008 sale.

Plaintiff resided at the subject property, her address of record, and Plaintiff's real estate broker, Jane Dekelaita, witness for the Plaintiff, frequented the subject property during late October and early November, to allow a qualified Buyer access for termite inspections and miscellaneous inspections. She can testify as to the absence of notice.

## 2.2 If Defendants claim to have posted notice of the November 10, 2008, sale date, Defendants violated Plaintiff's Chapter 11 Bankruptcy Stay.

Posting of notice of the November 10, 2008 Trustee's Sale would (lawfully) have had to occur "at least 20 days before the date of sale [*CCC* 2924f.(b)]," or on or before October 21, 2008. Plaintiff's Chapter 11 Stay was in place until October 23, 2008. Therefore, if posting of notice occurred, it violated Plaintiff's Chapter 11 Stay.

Plaintiff submits these facts into evidence: Defendant (Lender) failed to act according to a contractual Presumption of Good Faith, and both Defendants violated the Chapter 11 Bankruptcy Stay or legal framework governing non-judicial power of sale foreclosure. Plaintiff prays that the U.S. Bankruptcy Court nullify the Trustee Sale, Order Defendants to pay Plaintiff's legal fees and costs, and award Plaintiff compensation for damages as allowed by law. Exhibit C provides confirmation of Lender's identity as JP Morgan Chase Bank, and Lender calculation of Plaintiff's interest in the property.

Dated: 30 July 2009                 Respectfully submitted under penalty of perjury,

Jo Ann Vassallo, Plaintiff, Pro Se

*EXHIBIT A*

## Modify your loan

If your loan is past due, we may be able to work together to get your loan back on track. The sooner we discuss your loan the better choices we may be able to offer you. Please contact us to see if this option is available to you. 

**If your home loan is past due, we may be able to:**

- Reduce your interest rate, so your monthly payments are lower.
- Extend your loan term so that your monthly payments are smaller, but spread out over a longer period of time.
- Add your past due amount to your outstanding loan balance, so you can get back on track with your regular payments.
- All of the above.

To find out if these options are right for you, complete our Borrower Assistance Form.* You can fill it out then fax or mail it to us. See the form for details.

## Forbearance

Forbearance is when we agree to postpone a pending foreclosure sale to give you an opportunity to temporarily make reduced monthly payments while we develop a long term solution for you. We may be able to offer you a forbearance plan if you are experiencing a temporary hardship, trying to sell your home, or attempting to change the terms of your loan. Please contact us to see if this option is available to you.

**With a forbearance agreement you may be able to receive:**

- A short-term break from payments or reduced monthly payments.
- A short-term postponement of a foreclosure sale to work toward a long term solution.

To find out if a forbearance plan is an option for you, complete our Borrower Assistance Form.* You can fill it out then fax or mail it to us. See the form for details.

## Short Sale

Depending on your situation, selling your home may be the best option. We may be able to accommodate a "short sale", where you pay off most of your home loan.

**Even if you owe more than your house is currently worth, a short sale may enable you to:**

- Control the timing and details of your home sale.
- Control the timing and details of moving from your home.

To find out more about a short sale, start by completing our Borrower Assistance Form.* You can fill it out then fax or mail it to us. See the form for details.

**If you want to apply for a short sale, you'll also need to provide:**

- A signed purchase contract between you, as the seller, and your buyer.
- An estimated HUD-1 Settlement Statement.
- Lien release letters for any other mortgages or liens on the property.
- Letter authorizing WaMu to discuss the transaction with your realtor or title company.

Get started by providing your current financial information. Please complete our Borrower Assistance Form.*

**Here are the ways you can send us this information:**

Fax                         (904) 886-1329

Email                     homeownersassistance@wamu.net

Case 09-02091   Filed 09/29/09   Doc 1

# WaMu

## Borrower Assistance Form

You can help by answering the questions below as completely and accurately as possible.* If you have a co-borrower, please fill in his or her information, too.

*This information will only be used to aid in the evaluation of homeownership preservation options, not for any other purpose.

You can type your answers right into this form and fax or mail it in. See the instructions on the next page.

**1.** To help us locate your loan, please provide your name(s).

Jo Ann Vassallo
Borrower Name

none
Co-borrower Name

**2.** What are your current phone numbers?

( 916 ) 791-0630
Borrower Home Phone

( n/a )
Co-borrower Home Phone

( )
Borrower Work Phone

( )
Co-borrower Work Phone

( )
Borrower Mobile Phone

( )
Co-borrower Mobile Phone

**3.** Do you have your WaMu loan number?

☑ Yes, it is:        ☐ No
0667166052

**4.** What is the address of your property?

9060 Stockhorse Lane
Street Address            Apartment Number

Granite Bay        CA        95746
City            State        Zip

**5.** Do you (or your co-borrower) have a different mailing address?

☐ Yes        ☑ No

**6.** Please enter any additional mailing addresses.

same as above
Borrower Street Address        Apartment Number

City            State        Zip

Co-borrower Street Address        Apartment Number

City            State        Zip

**7.** How many people live at your address?

☐ 1  ☐ 2  ☑ 3  ☐ 4  ☐ 5  ☐ 6 or more

**8.** How many of the people living at this address are dependents?

☐ 1  ☑ 2  ☐ 3  ☐ 4  ☐ 5  ☐ 6 or more

**9.** What is the reason you are having trouble with your home loan payments?

They are approximately 70% of my gross income.

**10.** Would you prefer to keep your home or sell it?

☐ Keep my home        ☑ Sell it

**11.** If you want to sell, is it listed for sale?

☐ Currently listed    ☐ Was listed previously    ☐ Was never listed

**12.** Do you have any other loans on the home?

☐ Yes        ☐ No

**13.** If you have other loans on the home, approximately how much do you owe on all other loans combined?

475,000.00

14. Have you already spoken to a debt counseling service?
☑ Yes   ☐ No

15. How many cars do you own?
☑ 1   ☐ 2   ☐ 3   ☐ 4 or more

16. Please enter how much you pay for the items below each month, and total them in the last row.

| EXPENSE | BORROWER | | CO-BORROWER |
|---|---|---|---|
| Other Home Loans, Rent & Liens | $ | 6,356 | $ |
| Auto Loan(s) | $ | 650 | $ |
| Auto Insurance & Other Expenses | $ | 220 | $ |
| Credit Cards & Installment Loans | $ | 0 | $ |
| Health Insurance | $ | 60 | $ |
| Medical Expenses | $ | 130 | $ |
| Child Care, Child Support & Alimony | $ | 0 | $ |
| Food & Miscellaneous Spending Money | $ | 1,400 | $ |
| Utilities | $ | 540 | $ |
| Other Maintenance - yard and pool | $ | 400 | $ |
| Other dependent not living at home | $ | 2,400 | $ |
| TOTAL | $ | 12,156 | $ 0 |

17. Please enter your income details below, and total them in the last row.

| INCOME | BORROWER | | CO-BORROWER |
|---|---|---|---|
| Gross Wages | $ | 9,104 | $ |
| Other Income (unemployment, child support, etc.) | $ | 0 | $ |
| Other _____ | $ | 0 | $ |
| Other _____ | $ | 0 | $ |
| TOTAL | $ | 9,104 | $ 0 |

18. Please enter how much money you have in the assets below, and total them in the last row.

| ASSET | BORROWER | | CO-BORROWER |
|---|---|---|---|
| Checking Account(s) | $ | 200 | $ |
| Savings & Money Market Account(s) | $ | 100 | $ |
| Stocks, Bonds & CDs | $ | 0 | $ |
| Retirement Account(s) | $ | 0 | $ |
| Home Equity | $ | | $ |
| Other Real Estate Equity | $ | 0 | $ |
| Cars (with no loan payments) | $ | | $ |
| Other _____ | $ | | $ |
| TOTAL | $ | 300 | $ 0 |

I (we) agree that the financial information provided is an accurate statement of my (our) financial status. I (we) understand and acknowledge that any action taken by the lender of my (our) home loan on my (our) behalf will be made in strict reliance on the financial information provided. My (our) signature(s) below grants the holder of my (our) home loan the authority to confirm the information I (we) have disclosed in this financial statement, to verify that it is accurate by ordering a credit report and to contact my (our) real estate agent and or credit counseling representative (if applicable). By signing below, I (we) advise you that if I (we) should hereafter agree to a repayment plan for my (our) home loan, reinstate my (our) home loan, or pay off my (our) home loan in full, then by doing so and without the necessity of any further action on my (our) part, I (we) hereby expressly withdraw this request for a loan workout. In that event, I (we) hereby direct you to take no further action to process this request for a workout.

X _O. Dessallo_  9/1/08
Borrower                    Date

X n/a
Co-borrower                 Date

**WaMu Cares**
# Borrower Assistance Checklist

*Thank you for taking steps to resolve your home loan issues.*

*We'll contact you soon!*

## DON'T FORGET!  DID YOU...

☑ Fully complete all questions?
    **Remember:** If you have a co-borrower, we need his or her information, too.

☑ Sign and date this form?

☑ Include copies of your:
    ☑ Checking account statement(s)
    ☑ Savings account statement(s)
    ☑ Income history:
      • *If you are self-employed*—your past six months' profit-and-loss statements and most recent Federal tax return
      • *If you receive regular paychecks*—your two most recent pay stubs

☑ Copy the completed form for yourself?

## GREAT!

Now, either fax or mail your information to WaMu.

■ **Fax:** 904-886-1328 or 904-886-1329

■ **Mail:** WaMu Home Ownership Preservation,
    7255 Baymeadows Way, JAXA2000, Jacksonville, FL 32256

Case 09-02501    Filed 08/03/09    Doc 1

WAMU Loan # 0667166052

**CALIFORNIA ASSOCIATION OF REALTORS®**

# RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
### For Use With Single Family Residential Property — Attached or Detached
### (C.A.R. Form RPA-CA, Revised 1/06)

Date **June 18, 2008** , at **Roseville** , California.

**1. OFFER:**

A. THIS IS AN OFFER FROM **Frieda S. Yang** ("Buyer").

B. THE REAL PROPERTY TO BE ACQUIRED is described as **9060 Stockhorse Lane, Granite Bay  CA  95746** , Assessor's Parcel No. _____ , situated in **Granite Bay** , County of **Placer** , California, ("Property").

C. THE PURCHASE PRICE offered is **Eight hundred thousand**
Dollars $ **800,000.00** .

D. CLOSE OF ESCROW shall occur on _____ (date) (or ☐ **5** Days After Acceptance).

**2. FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.

A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of .......................... $ **50,000.** to the agent submitting the offer (or to ☐ _____ ), by personal check (or ☐ _____ ), made payable to **Lyon Trust Account** , which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance (or ☐ _____ ), with Escrow Holder, (or ☒ into Broker's trust account).

B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ..... $ _____ within _____ Days After Acceptance, or ☐ _____ .

C. FIRST LOAN IN THE AMOUNT OF ............................................ $ _____
   (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum interest of _____ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate of _____ %, balance due in _____ years, amortized over _____ years. Buyer shall pay loan fees/points not to exceed _____ . (These terms apply whether the designated loan is conventional, FHA or VA.)
   (2) ☐ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.) Seller shall pay _____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer, ☐ not to exceed $ _____ . Seller shall pay the cost of lender required Repairs (including those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed $ _____ . (Actual loan amount may increase if mortgage insurance premiums, funding fees or closing costs are financed.)

D. ADDITIONAL FINANCING TERMS: ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, .......... $ _____
   (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)

E. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of .. $ **750,000.00** to be deposited with Escrow Holder within sufficient time to close escrow.

F. PURCHASE PRICE (TOTAL): .................................................. $ **800,000.00**

G. LOAN APPLICATIONS: Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.

H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant-to-2G) shall, within 7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.

I. LOAN CONTINGENCY REMOVAL: (i) Within 17 (or ☐ _____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.

J. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or _____ ) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or _____ ) Days After Acceptance.

K. ☒ NO LOAN CONTINGENCY (If checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

L. ☒ ALL CASH OFFER (If checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☒ **1** ) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.

**3. CLOSING AND OCCUPANCY:**

A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.

B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at **6:00** ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐ on _____ ; or ☐ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( X _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

RPA-CA REVISED 1/06 (PAGE 1 OF 8)   **CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent:  Chris Sheffer   Phone: _____ Fax: _____   Prepared using WINForms® software
Broker: Lyon Real Estate, Roseville 2220 Douglas Boulevard, Suite 100Roseville, CA 95661

06-20-2008 02:35PM FROM-LYON ROSEVILLE

Date: June 18, 2008

Property Address: Granite Bay, CA 95746
9060 Stockhorse Lane

C. **Tenant-occupied property:** (i) Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (If checked) ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3;);

OR (iii) (If checked) ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS (If checked):** Unless otherwise specified in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. **WOOD DESTROYING PEST INSPECTION:**
(1) ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _seller's choice_ , a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas _____. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ (If checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. **OTHER INSPECTIONS AND REPORTS:**
(1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
(2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _Property ID_
(3) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report or report _home inspection_
(4) ☒ Buyer ☐ Seller shall pay for the following inspection or report _____
(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
(2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _____

D. **ESCROW AND TITLE:**
(1) ☒ Buyer ☒ Seller shall pay escrow fee _(50/50)_
Escrow Holder shall be _Chicago Title_
(2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
Owner's title policy to be issued by _Chicago Title_
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. **OTHER COSTS:**
(1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
(2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee _____
(3) ☐ Buyer ☒ Seller shall pay HOA transfer fee _____
(4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
(5) ☒ Buyer ☐ Seller shall pay the cost, not to exceed $ _355.00_ , of a one-year home warranty plan, issued by _American Home Shield flex Plan_ with the following optional coverage: _air conditioner_
(6) ☐ Buyer ☐ Seller shall pay for _____
(7) ☐ Buyer ☐ Seller shall pay for _____

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordinance location disclosure (C.A.R. Form SSD).
(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials (X _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

Richard-Stockh

Property Address: <u>9050 Stockhorse Lane</u>
<u>Granite Bay, CA  95746</u>

Date: <u>June 18, 2008</u>

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. **NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (I) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (II) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (III) disclose any other zone as required by Law and provide any other information required for those zones.

C. **DATA BASE DISCLOSURE: Notice:** Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

6. **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**

A. **SELLER HAS: 7 (or** ☐ _____ **)** Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (I) Copies of any documents required by Law; (II) disclosure of any pending or anticipated claim or litigation by or against the HOA; (III) a statement containing the location and number of designated parking and storage spaces; (IV) Copies of the most recent 12 months of HOA Minutes for regular and special meetings; and (V) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

7. **CONDITIONS AFFECTING PROPERTY:**

A. Unless otherwise agreed: (I) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (II) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (III) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

B. **SELLER SHALL,** within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).

C. **NOTE TO BUYER:** You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

D. **NOTE TO SELLER:** Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (I) cancel this Agreement; or (II) request that you make Repairs or take other action.

8. **ITEMS INCLUDED AND EXCLUDED:**

A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. **ITEMS INCLUDED IN SALE:**

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and

(3) The following items: _____

(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

(5) All items included shall be transferred free of liens and without Seller warranty.

C. **ITEMS EXCLUDED FROM SALE:** _____

9. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: the right to: (I) inspect for lead-based paint and other lead-based paint hazards; (II) inspect for wood destroying pests and organisms; (III) review the registered sex offender database; (IV) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (I) invasive or destructive Buyer Investigations; or (II) inspections by any governmental building or zoning Inspector or government employee, unless required by Law.

B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's investigations and through the date possession is made available to Buyer.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 3 OF 8)

Buyer's Initials ( X <u>ILS</u> ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)**

Richard-Stockh

06-20-2008  02:36PM  FROM-LYON  ROSEVILLE

Date: _June 18, 2008_

Property Address: __Granite Bay, CA  95746__

**10. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

**11. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**12. TITLE AND VESTING:**

A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**13. SALE OF BUYER'S PROPERTY:**

A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).

A. SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.

B. (1) BUYER HAS: 17 (or ☐ ____5____ ) Days After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
(ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

(2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

(3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) government-mandated inspections/ reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.

C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:
(1) Seller right to Cancel; Buyer Contingencies: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.
(2) Continuation of Contingency: Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, or remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).
(3) Seller right to Cancel; Buyer Contract Obligations: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.
(4) Notice To Buyer To Perform: The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( X _____ )( _____ )
Seller's Initials ( _____ )( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 4 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**

Richard-Stockh

Property Address: __Granite Bay, CA   95746__   9060 Stockhorse Lane

Date: __June 18, 2008__

**D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

**E. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. **BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)**

Buyer's Initials  ___YB___ / _____        Seller's Initials  _____ / _____

17. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

Buyer's Initials  ___YB___ / _____        Seller's Initials  _____ / _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 5 OF 8)

Buyer's Initials ( X _YB_ )( _____ )
Seller's Initials ( _____ )( _____ )

Reviewed by _____  Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)**

Richard-Stockh

08-20-2008  02:37PM  FROM-LYON  ROSEVILLE                                    T-905  P.007/011  F-989

Date: __June 18, 2008__

Property Address: __9060 Stockhorse Lane__
__Granite Bay, CA  95746__

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

25. **OTHER TERMS AND CONDITIONS,** including attached supplements:
   A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
   B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____)
   C. ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
   D. _____

26. **DEFINITIONS:** As used in this Agreement:
   A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. **"Agreement"** means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
   C. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
   D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
   E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
   F. **"Days"** means calendar days, unless otherwise required by Law.
   G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
   J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
   K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
   L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
   N. Singular and Plural terms each include the other, when appropriate.

Buyer's Initials ( X LWS )(_____)
Seller's Initials (_____)(_____)

Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 6 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)**

Richard-Stockb

**9060 Stockhorse Lane**
Property Address: __Granite Bay, CA  95746__          Date: __June 18, 2008__

**27. AGENCY:**

  **A. DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

  **B. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

  **C. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

    Listing Agent _____ __Coldwell Banker__ _____ (Print Firm Name) is the agent of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.

    Selling Agent _____ __Lyon Real Estate__ _____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

  **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25D, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

  **B.** A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

  **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

  **D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**

This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 7 OF 8)

Buyer's Initials ( X _J.V.B_ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)**     Richard-Stockh

Property Address: 3060 Stockton Lane _____ Granite Bay, CA 95746

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the signed offer is personally received by Buyer, or by _____ who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☒ by

Date June 18, 2008 _____ August 21, 2008 _____ Date _____ (date), at _____ 5:00 ☐ AM ☒ PM).

BUYER X _____

Frieda S. Yang
(Print name)
52 Sakurai Court, Sacramento CA 95834
(Address)

BUYER _____
(Print name)

**32. BROKER COMPENSATION FROM SELLER:**
A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
B. If escrow does not close, compensation is payable as specified in that separate written agreement.

**33. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (if checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED _____

Date _____
SELLER _____

(Print name)
(Address)

Date _____
SELLER _____
(Print name)

( / ) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(Initials) agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when
a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in
this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely
intended to evidence the date that Confirmation of Acceptance has occurred.

REAL ESTATE BROKERS:
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2A.
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to
accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in
which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement
CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) Lyon Real Estate
By Chris Sheffer DRE Lic. # 01405862 DRE Lic. # _____
Address 2220 Douglas Blvd. Suite 100 City Roseville State CA Zip 95661 Date June 18, 2008
Telephone (916)300-5838 Fax (916)784-1878 E-mail csheffer@golyon.com

Real Estate Broker (Listing Firm) Coldwell Banker
By _____ Jane Dakalaits DRE Lic. # _____ DRE Lic. # _____
Address 2220 Douglas Blvd., Roseville CA 95661 Date 6-20-08
Telephone _____ Fax _____ City _____ E-mail _____ State _____ Zip _____

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ )
counter offer numbers _____ , and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder Chicago Title
By _____ Jean Williams Date _____ Escrow # _____
Address 2220 Douglas Blvd., Roseville CA 95661
Phone/Fax/E-mail 916-783-7198
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

( ) REJECTION OF OFFER: No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's initials) _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
RPA-CA REVISED 1/06 (PAGE 8 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)**

Reviewed by _____ Date _____

Richard-Snoski



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## SHORT SALE ADDENDUM
(C.A.R. Form SSA, 11/07)

This is an addendum to the ☒ California Residential Purchase Agreement, ☐ Counter Offer, ☐ Other _____
("Agreement"), dated _____ **June 18, 2008**,
on property known as _____ 9060 Stockhorse Lane, Granite Bay CA 95746 _____
("Property"), between _____ **Frieda S. Yang** _____
("Buyer") and _____
("Seller").

**A. SHORT SALE APPROVAL.** This Agreement is contingent upon Seller's receipt of written consent from all existing secured lenders and lienholders ("Short-Sale Lenders"), no later than 6:00 P.M. on ___ Aug. 31, 2008 ___ (date) ("Short-Sale Contingency Date"), to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the Property to pay the existing balances on loans secured by the Property, real property taxes, brokerage commissions, closing costs, and other monetary obligations the Agreement requires Seller to pay at Close Of Escrow (including, but not limited to, escrow charges, title charges, documentary transfer taxes, prorations, retrofit costs and Repairs) without requiring Seller to place any funds into escrow. If Seller fails to give Buyer written notice of all existing Short-Sale Lenders' consent by the Short-Sale Contingency Date, either Seller or Buyer may cancel the Agreement in writing, and Buyer shall be entitled to a return of any deposit. Seller shall reasonably cooperate with existing Short-Sale lenders in the short-sale process.

**B. TIME PERIODS: BUYER'S DEPOSIT CHECK**
1. Time periods in the Agreement for inspections, contingencies, covenants, and other obligations: (i) shall begin as specified in the Agreement; or (ii) (if checked) ☐ shall begin the Day After Seller delivers to Buyer written notice of Short-Sale Lenders' consent.
2. Buyer's deposit check shall be: (i) immediately handled as provided in the Agreement; or (ii) (if checked) ☐ held uncashed until the Day After Seller delivers to Buyer a written notice of Short-Sale Lenders' consent.

**C. NO ASSURANCE OF LENDER APPROVAL.** Buyer and Seller understand that Short-Sale Lenders (i) are not obligated to give consent to a short-sale; (ii) may require Seller to forward any other offer received; and (iii) may give consent to other offers. Additionally, Short-Sale Lenders may require that, in order to obtain their approval for a short sale, some terms of the Agreement, such as the Close of Escrow, be amended or that Seller sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Buyer and Seller do not have to agree to any of Short-Sale Lenders' proposed terms. Buyer, Seller and Brokers do not have control over whether Short-Sale Lenders will consent to a short-sale, or any act, omission, or decision by any Short-Sale Lender in the short-sale process.

**D. BUYER AND SELLER COSTS.** Buyer and Seller acknowledge that each may incur costs in connection with rights or obligations under the Agreement. These costs may include, but are not limited to, payments for loan applications, inspections, appraisals, and other reports. Such costs will be the sole responsibility of the party incurring them, if Short-Sale Lenders do not consent to the transaction or either party cancels pursuant to the Agreement.

**E. OTHER OFFERS.** Unless otherwise agreed in writing, Seller may continue to market the Property despite acceptance of Buyer's offer, and to present to Short-Sale Lender(s) any additional offers that are received on the Property.

**F. CREDIT, LEGAL AND TAX ADVICE.** Seller is informed that a short-sale may have credit or legal consequences and may result in taxable income to Seller. Seller is advised to seek advice from an attorney, certified public accountant or other expert regarding such potential consequences of a short-sale.

**By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a copy of this Short Sale Addendum.**

Date **June 18, 2008** _____ Date _____

Buyer _____ Seller _____
      **Frieda S. Yang**

Buyer _____ Seller _____

The copyright laws of the United States (TITLE 17 U.S. Code) forbid the unauthorized reproduction of this form by any means, including facsimile or computerized formats. Copyright © 2007-2008, CALIFORNIA ASSOCIATION OF REALTORS®. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

SSA 11/07 (PAGE 1 OF 1)          **SHORT SALE ADDENDUM (SSA PAGE 1 OF 1)**

**Agent:** Chris Shaffer          **Phone:**          **Fax:**          **Prepared using WINForms® software**
**Broker:** Lyon Real Estate, Roseville 2220 Douglas Boulevard, Suite 100Roseville, CA 95661



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**COUNTER OFFER  No. #1**
For use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date _6-23-08_ at _Folsom_ , California.
This is a counter offer to the: ☐ California Residential Purchase Agreement, ☐ Counter Offer, or ☐ Other _____ ("Offer"),
dated _6-16-08_ on property known as _9160 Stockhorse Ln._ ("Property"),
between _Frieda S. Yang_ ("Buyer") and _John Vassallo_ ("Seller").
1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. _1) Sales price to be #1,000,000 (ONE MILLION DOLLARS)_
   _2) Seller to provide clean Title including #1_
   _payment of real estate agent ($8,000) and a flat fee to_
   _S&A Satisfaction agent $8,000 (and a flat real estate_
   _of focus holding Inass edge to agent) and release_
   _3) Contingent upon banks approval_
   D. The following attached supplements are incorporated into this Counter Offer: ☐ Addendum No. _____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or _Jane Vassallo_ , who is authorized to receive it, by 5:00PM on the third Day After this Counter Offer is made or, (if checked) by ☐ _6-28-08_ (date), at _5:00_ AM/PM. This Counter Offer may be executed in counterparts.

4. ☐ **(If checked) MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____ , who is authorized to receive it, by 5:00 PM on the third Day After this Counter Offer is made or, (if checked) by ☐ _____ (date), at _____ AM/PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER: BUYER OR SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   _John Vassallo_ Date _6/21/08_
   _____ Date _____

6. **ACCEPTANCE:** I/WE accept the above Counter Offer (if checked ☒ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   _____ Date _6/28/08_ Time _____ AM/PM
   _____ Date _____ Time _____ AM/PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer. **NOTE TO SELLER:** Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   _____ Date _____ Time _____ AM/PM
   _____ Date _____ Time _____ AM/PM

8. ( ___/___ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the _____ Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____ , at _____ AM/PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SURE TRAC** The System for Success

CO REVISED 10/04 (PAGE 1 OF 1)   Print Date BDC May 06

Reviewed by _____ Date _____

MASTER COPY

**COUNTER OFFER  (CO PAGE 1 OF 1)**

The official 8100 Series 6110xi **COUNTER OFFER No.** Power-Fail Report for
Personal Printer-Fax/Copier/Scanner Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04) 791-4324

Nat Gas 27 2008 9:35am

**Date** June 28, 2008 , at California ("Offer"),
This is a counter offer to the: ☐ California Residential Purchase Agreement, ☒ Counter Offer, or ☐ Other
dated June 23, 2008 , on property known as 9060 Stockhorse Lane ("Property"),
between Frieda S. Yang, ("Buyer") and ("Seller").

**A power failure occurred during the following transactions:**

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement

   These faxes were not completely sent paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jun 25 | 2:58pm | Fax Sent | 13122606893 | 0:00 | 0 | Power failure |

   C. 1) Sales Price to be $800,000

   D. The following attached supplements are incorporated into this Counter Offer: ☐ Addendum No. _____

2. **RIGHT TO ACCEPT OTHER OFFERS:** Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. **EXPIRATION:** This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or Chris Sheffer who is authorized to receive it, by 5:00 PM on the third Day after this Counter Offer is made or, (if checked) by ☒ June 30, 2008 (date), at 5:00 ☐ AM ☒ PM. This Counter Offer may be executed in counterparts.

4. ☐ **(If checked:) MULTIPLE COUNTER OFFER:** Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-Signed by Seller in paragraph 7 below and a Copy of the Counter Offer Signed in paragraph 7 is personally received by Buyer or by _____, who is authorized to receive it, by 5:00PM on the third Day after this Counter Offer is made or, (if checked) by _____ (date), at _____ ☐ AM ☐ PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. **OFFER:** ☒ BUYER OR ☐ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Date June 28, 2008
   Frieda S. Yang, _____ Date _____

6. **ACCEPTANCE:** I/WE accept the above Counter Offer (If checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   Date _____ Time _____ ☐ AM ☐ PM
   Date _____ Time _____ ☐ AM ☐ PM

7. **MULTIPLE COUNTER OFFER SIGNATURE LINE:** By signing below, Seller accepts this Multiple Counter Offer.
   **NOTE TO SELLER:** Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   Date _____ Time _____ ☐ AM ☐ PM
   Date _____ Time _____ ☐ AM ☐ PM

8. ( _____ / _____ ) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) _____ , at _____ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by the maker of the Counter Offer, or that person's authorized agent (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent) whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
**REAL ESTATE BUSINESS SERVICES, INC.**
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____
Broker or Designee

CO REVISED 10/04 (PAGE 1 OF 1)

**COUNTER OFFER (CO PAGE 1 OF 1)**

| Agent: Chris Sheffer | Phone: | Fax: | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Lyon Real Estate, Roseville 2220 Douglas Boulevard, Suite 100 Roseville, CA 95661 | | | |

Property Address: _Granite Bay, CA   95746_  Date: _June 18, 2008_

C. **Tenant-occupied property:** (i) Property shall be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 1);

OR (iii) (if checked) ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS (If checked):** Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. **WOOD DESTROYING PEST INSPECTION:**
   (1) ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _____ _seller's choice_ _____, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas _____. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ (If checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. **OTHER INSPECTIONS AND REPORTS:**
   (1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
   (2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
   (3) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by _Property ID_ _____
   (4) ☒ Buyer ☐ Seller shall pay for the following inspection or report _home inspection_ _____
   (5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

C. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
   (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
   (2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _____

D. **ESCROW AND TITLE:**
   (1) ☒ Buyer ☒ Seller shall pay escrow fee _(50/50)_ _____
       Escrow Holder shall be _Chicago Title_ _____
   (2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
       Owner's title policy to be issued by _Chicago Title_ _____
       (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. **OTHER COSTS:**
   (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
   (2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee _____
   (3) ☐ Buyer ☒ Seller shall pay HOA transfer fee _____
   (4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
   (5) ☒ Buyer ☐ Seller shall pay the cost, not to exceed $ _355.00_ _____, of a one-year home warranty plan, issued by _American Home Shield flex Plan_ _____
       with the following optional coverage: _air conditioner_ _____
   (6) ☐ Buyer ☐ Seller shall pay for _____
   (7) ☐ Buyer ☐ Seller shall pay for _____

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordinance location disclosure (C.A.R. Form SSD).
   (2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
   (3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials (X_____)(_____)
Seller's Initials (_____)(_____)

Reviewed by _____ Date _____

9060 *Stockhorse Lane*
Property Address: _Granite Bay, CA  95746_  Date: _June 18, 2008_

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)
(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. **NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. **DATA BASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

6. **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**
   A. **SELLER HAS:** 7 (or ☐ _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).
   B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

7. **CONDITIONS AFFECTING PROPERTY:**
   A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   B. **SELLER SHALL,** within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).
   C. **NOTE TO BUYER:** You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.
   D. **NOTE TO SELLER:** Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

8. **ITEMS INCLUDED AND EXCLUDED:**
   A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.
   B. **ITEMS INCLUDED IN SALE:**
      (1) All EXISTING fixtures and fittings that are attached to the Property;
      (2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and
      (3) The following items: _____
      _____
      (4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
      (5) All items included shall be transferred free of liens and without Seller warranty.
   C. **ITEMS EXCLUDED FROM SALE:** _____

9. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 3 OF 8)

Buyer's Initials (____)(____)
Seller's Initials (____)(____)
Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)**  Richard-Stockh

Property Address: *Granite Bay, CA 95746*                                      Date: *June 18, 2008*

10. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (I) obtain receipts for Repairs performed by others; (II) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (III) provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (I) keep the Property free and clear of liens; (II) Repair all damage arising from Buyer Investigations; and (III) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (I) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (II) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**
   A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
   OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).
   A. **SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance** to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.
   B. (1) **BUYER HAS: 17 (or ☐ is 5 ) Days After Acceptance,** unless otherwise agreed in writing, to:
      (I) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
      (II) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.
      (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
      (3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (I) government-mandated inspections/ reports required as a condition of closing; or (II) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.
   C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**
      (1) **Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.
      (2) **Continuation of Contingency:** Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).
      (3) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (I) if Buyer fails to deposit funds as required by 2A or 2B; (II) if the funds deposited pursuant to 2A or 2B are not good when deposited; (III) if Buyer fails to provide a letter as required by 2G; (IV) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.
      (4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (I) be in writing; (II) be signed by Seller; and (III) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( *X* )( )
Seller's Initials ( )( )

Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 4 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 8)**

Richard-Stockh

*9060 Stockhorse Lane* Case 09-02501  Filed 08/03/09  Doc 1

Property Address: Granite Bay, CA  95746 _____ Date: *June 18, 2008*

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**
**BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)**

| Buyer's Initials _____/ _____ | Seller's Initials _____/ _____ |

17. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**

(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Buyer's Initials _____/ _____ | Seller's Initials _____/ _____ |

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 5 OF 8)

Buyer's Initials (X_____)(_____)
Seller's Initials (_____)(_____)
Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)

Richard-Stockh...

9060 Stockhorse Lane

Property Address: Granite Bay, CA 95746                                     Date: June 18, 2008

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

25. **OTHER TERMS AND CONDITIONS,** including attached supplements:
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ )
    C. ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
    D. _____

26. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. **"C.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days, unless otherwise required by Law.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. **"Notice to Buyer to Perform"** means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. Singular and Plural terms each include the other, when appropriate.

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 6 OF 8)



Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)**                    Richard-Stockton

9060 Stockhorse Lane
Property Address: *Granite Bay, CA  95746*                                        Date: *June 18, 2008*

**27. AGENCY:**

    **A. DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

    **B. POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

    **C. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
    Listing Agent _____ *Coldwell Banker* _____ (Print Firm Name) is the agent
    of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
    Selling Agent _____ *Lyon Real Estate* _____ (Print Firm Name) (if not same
    as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25D, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

    **B.** A Copy of this Agreement shall be delivered to Escrow Holder within **3** business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

    **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

    **D.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**

This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 1/06 (PAGE 7 OF 8)

Reviewed by _____  Date _____



**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)**                    Richard-Stockh

CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 11/07)

Date _June 2, 2008_ , at _____ _Roseville_ , California.

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _Nadar N. Mobini, Fahimeh F. Bozorgzad_ ("Buyer").
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _9060 Stockhorse Lane, Granite Bay  CA  95746_ , situated in
      _____ , Assessor's Parcel No. _____ , County of _Placer_ , California, ("Property").
      _Granite Bay_
   C. **THE PURCHASE PRICE** offered is _Six Hundred Fifty Thousand $ 00/100_ Dollars $ _650,000_ .
   D. **CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ _30_ Days After Acceptance).

2. **FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise
   agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not
   a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Buyer has given a deposit in the amount of ............................................. $ _5,000_
      to the agent submitting the offer (or to ☐ _____ ), by personal check
      (or ☐ _____ ), made payable to _____
      which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
      (or ☐ _____ ), with
      Escrow Holder, (or ☐ into Broker's trust account).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of ...... $ _5,000_
      within _____ Days After Acceptance, or ☐ _____ $ _417,000_
   C. **FIRST LOAN IN THE AMOUNT OF** .................................................................... $
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum
          interest of _____ % fixed rate, or _____ % initial adjustable rate with a maximum interest rate
          of _____ %, balance due in _____ years, amortized over _____ years. Buyer shall
          pay loan fees/points not to exceed _____ (These terms apply whether the designated loan
          is conventional, FHA or VA.)
      (2) ☐ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.)
          Seller shall pay _____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer,
          ☐ not to exceed $ _____ . Seller shall pay the cost of lender required Repairs (including
          those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed
          $ _____ . (Actual loan amount may increase if mortgage insurance premiums, funding
          fees or closing costs are financed.)
   D. **ADDITIONAL FINANCING TERMS:** ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, .......... $
      (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B),
      _Seller to credit Buyer $3,000 toward_ _223,000_
      _Closing Costs_
   E. **BALANCE OF PURCHASE PRICE** (not including costs of obtaining loans and other closing costs) in the amount of $ _650,000_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** $ _650,000_
   G. **LOAN APPLICATIONS:** Within 7 (or ☒ _Done_ ) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan
      broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan
      specified in 2C above.
   H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within
      7 (or ☐ _____ ) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. **LOAN CONTINGENCY REMOVAL:** (i) Within 17 (or ☐ _____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove
      the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are
      funded.
   J. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no
      less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or
      _____ ) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement.
      If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or _____ ) Days
      After Acceptance.
   K. ☐ **NO LOAN CONTINGENCY** (If checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this
      Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or
      other legal remedies.
   L. ☐ **ALL CASH OFFER** (If checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ _____ ) Days After Acceptance,
      provide Seller written verification of sufficient funds to close this transaction.

3. **CLOSING AND OCCUPANCY:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. **Seller-occupied or vacant property:** Occupancy shall be delivered to Buyer at _5:00_ , ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐
      on _____ ; or ☐ no later than _____ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and
      occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their
      insurance and legal advisors.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1991-2007,
CALIFORNIA ASSOCIATION OF REALTORS, INC. ALL RIGHTS RESERVED.

Buyer's Initials ( ___ )( _F.B_ )
Seller's Initials ( ___ )( ___ )

Reviewed by _____ Date _____

**RPA-CA REVISED 11/07 (PAGE 1 OF 8)**      **CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

| Agent: Jane Dekelaita | Phone: (916) 813 - 1100 | Fax: | Prepared using WINForms® software |

9060 Stockhorse     ne
Property Address: Granite Bay, CA   5746                              Date: June 2, 2008

C. **Tenant-occupied property: (i)** Property **shall** be vacant at least 5 (or ☐ _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller:** If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR (iii) (if checked) ☐ **This Agreement is** contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. **ALLOCATION OF COSTS** (If checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. WOOD DESTROYING PEST INSPECTION:
   (1) ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _____ _Seller's Choice_ _____ a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas _____ _____ The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ **(If checked)** The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. OTHER INSPECTIONS AND REPORTS:
   (1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
   (2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
   (3) ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report prepared by _____
   (4) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
   (5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

C. GOVERNMENT REQUIREMENTS AND RETROFIT:
   (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
   (2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. _____

D. ESCROW AND TITLE:
   (1) ☒ Buyer ☒ Seller shall pay escrow fee _____
       Escrow Holder shall be _Seller's Choice_ _____
   (2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
       Owner's title policy to be issued by _Seller's Choice_ _____
       (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. OTHER COSTS:
   (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
   (2) ☐ Buyer ☐ Seller shall pay City transfer tax or transfer fee _____
   (3) ☐ Buyer ☐ Seller shall pay HOA transfer fee _____
   (4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees _____
   (5) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ _450. —_ _____, of a one-year home warranty plan, issued by _Buyers Choice_ _____ with the following optional coverage: _Basic, air + Pool & Spa_ _____
   (6) ☐ Buyer ☐ Seller shall pay for _____
   (7) ☐ Buyer ☐ Seller shall pay for _____

5. **STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
   A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordinance location disclosure (C.A.R. Form SSD).
   (2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
   (3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _F-B_ ) ( _____ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
**RPA-CA REVISED 11/07 (PAGE 2 OF 8)**

Reviewed by _____ Date _____

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)**                9060 Stockhors

Case 09-02601   Filed 08/03/09   Doc 1

Date: June 2, 2008

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

6. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:

A. SELLER HAS: 7 (or ☐ _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

7. CONDITIONS AFFECTING PROPERTY:

A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).

C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

8. ITEMS INCLUDED AND EXCLUDED:

A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. ITEMS INCLUDED IN SALE:

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and

(3) The following items:

(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

(5) All items included shall be transferred free of liens and without Seller warranty.

C. ITEMS EXCLUDED FROM SALE: None

BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Buyer's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials ( S )
Seller's Initials ( ) ( F-B )

Reviewed by _____ Date _____

9060 Stockhorse ne
Date: June 2, 2008

Property Address: Granite Bay, CA  95746

10. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. **TITLE AND VESTING:**
   - A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.
   - B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   - C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   - D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   - E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**
   - A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
   OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).
   - A. **SELLER HAS: 7 (or ☐ _____ )** Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.
   - B. (1) **BUYER HAS: 17 (or ☐ _____ )** Days After Acceptance, unless otherwise agreed in writing, to:
      - (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
      - (ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.
      - (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
      - (3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) government-mandated inspections/ reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ _____ ) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.
   - C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**
      - (1) **Seller right to Cancel; Buyer Contingencies:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.
      - (2) **Continuation of Contingency:** Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).
      - (3) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. **Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.**
      - (4) **Notice To Buyer To Perform:** The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ _____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 4 OF 8)

Reviewed by _____ Date _____

9060 Stockhorse ne
Property Address: Granite Bay, CA  95746                                                            Date: June 2, 2008

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.
BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)

| Buyer's Initials _____ / _F. B_ | Seller's Initials _____ / _____ |
| --- | --- |

17. **DISPUTE RESOLUTION:**
A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES: (1)** Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.
(2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.
(3) **BROKERS:** Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |
| --- | --- |

| Buyer's Initials ( ___ ) ( _F. B_ ) | |
| --- | --- |
| Seller's Initials ( ___ ) ( ___ ) | |

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 5 OF 8)

| Reviewed by _____ | Date _____ |
| --- | --- |

Date: _____

Address: **9060 Stockhorse** le
**Granite Bay, CA  95746**

PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS: Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

21. WITHHOLDING TAXES: Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

22. MULTIPLE LISTING SERVICE ("MLS"): Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

22. EQUAL HOUSING OPPORTUNITY: The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. SELECTION OF SERVICE PROVIDERS: If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES: Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

25. OTHER TERMS AND CONDITIONS, including attached supplements:
   A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
   B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____ )
   C. ☑ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
   D. ☐ Seller shall provide Buyer with a completed Seller Property Questionnaire (C.A.R. form SPO) within the time specified in paragraph 14A
   E. _Short Sale Addendum_

26. DEFINITIONS: As used in this Agreement:
   A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
   B. "Agreement" means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
   C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
   D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
   E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
   F. "Days" means calendar days, unless otherwise required by Law.
   G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
   H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
   I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
   J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which shall be in writing and Signed by Seller and shall federal legislative, judicial or executive body or agency.
   K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
   L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
   M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
   N. Singular and Plural terms each include the other, when appropriate.

Buyer's Initials ( _____ )( _F.B_ )
Seller's Initials ( _____ )( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 6 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 8)

9060 Stock

Property Address: *9060 Stockhorse lne*
*Granite Bay, CA   95746*                                          Date: *June 2, 2008*

**27. AGENCY:**

A. **DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

B. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

C. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent _____ *Coldwell Banker* _____ (Print Firm Name) is the agent
of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
Selling Agent _____ *Coldwell Banker* _____ (Print Firm Name) (if not same
as Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☒ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25D, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, **Buyer** agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**

This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials ( _____ )( *F. B* )
Seller's Initials ( _____ )( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 11/07 (PAGE 7 OF 8)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)**

9060 Stockhors

Property Address: 9060 Stockhorse ne
Granite Bay, CA  95746                                    Date: June 2, 2008

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ Jane deKelaita _____ who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by _____ (date), at _____ ☐ AM ☐ PM).

Date June 2, 2008 _____                              Date June 2, 2008 _____
BUYER _Nadir Neshukwi_ _____                          BUYER _____
_Nadar N. Mobini_ _____                               _Fahimeh F. Bozorgzad_ _____
**(Print name)**                                        **(Print name)**

**(Address)**
32. **BROKER COMPENSATION FROM SELLER:**
    A.  Upon Close Of Escrow, **Seller** agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
    B.  If escrow does not close, compensation is payable as specified in that separate written agreement.
33. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
    ☐ (If checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** _____

Date _____                                            Date _____
SELLER _____                                          SELLER _____

**(Print name)**                                        **(Print name)**

**(Address)**
        **CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
( _____ / _____ )  agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when
**(Initials)**   a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A.  Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B.  Agency relationships are confirmed as stated in paragraph 27.
C.  If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D.  **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) _Coldwell Banker_ _____           DRE Lic. # _____
By _____ DRE Lic. # _____                                          Date _____
Address _____ City _____                                           State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Listing Firm) _Coldwell Banker_ _____                     License # _____
By _____ _Jane deKeliata_ License # _____                          Date June 2, 2008
Address _2270 Douglas Blvd.  #120_ City _Roseville_                     State _CA_ Zip _95661_
Telephone _(916) 813-1100_ Fax _(916) 405-7676_ E-mail _jane.dekelaita@cbnorcal.com_

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), counter offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _Seller's Choice_ _____                                Escrow # _____
By _____                                                             Date _____
Address _____
Phone/Fax/E-mail _//_ _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

( _____ / _____ )  **REJECTION OF OFFER:** No counter offer is being made. This offer was reviewed and rejected by Seller on
**(Seller's Initials)**                _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
• 525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**RPA-CA REVISED 11/07 (PAGE 8 OF 8)**



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

# BUYER'S INSPECTION ADVISORY
### (C.A.R. Form BIA-A, Revised 10/02)

Property Address: 9060 Stockhorse Lane, Granite Bay  CA  95746 _____ ("Property").

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**
  1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)
  2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)
  3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.
  4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
**BIA-A REVISED 10/02 (PAGE 1 OF 2)**

Buyer's Initials ( _S_ )( _I-B_ )
Seller's Initials ( _____ )( _____ )

Reviewed by _____ Date _____


EQUAL HOUSING OPPORTUNITY

## BUYER'S INSPECTION ADVISORY (BIA-A PAGE 1 OF 2)

Agent:  Jane Dekelaita    Phone: (916) 813 - 1100    Fax:    Prepared using WINForms® software
Broker: Coldwell Banker Northern California 2270 Douglas Blvd. #120 Roseville, CA  95661

Property Address: _9060 Stockhorse L___, ____White Bay___, CA__ 95746 Date: _June 2, 2008_

5. **ROOF:** Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)

6. **POOL/SPA:** Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)

7. **WASTE DISPOSAL:** Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

8. **WATER AND UTILITES; WELL SYSTEMS AND COMPONENTS:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.

9. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)

10. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)

11. **FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)

12. **BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)

13. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)

14. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)

15. **NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common botanical diseases, historic or other governmentally protected sites or improvements, protected species, wetland properties, areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer and Seller acknowledge and agree that Broker: **(i):** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(x)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.**

_Nadir New Mob_ (signature)
Buyer Signature                                   _06/02/2008_
_Nadar N. Mobini_                                        Date

(signature)
Buyer Signature                                   _06/02/2008_
_Fahimeh F. Bozorgzad_                                   Date

Seller Signature
                                                 Date

Seller Signature
                                                 Date

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.) NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
_a subsidiary of the California Association of REALTORS®_
525 South Virgil Avenue, Los Angeles, California 90020

BIA REVISED 10/02 (PAGE 2 OF 2)

BUYER'S INSPECTION ADVISORY (BIA PAGE 2 OF 2)

Reviewed by _____ Date _____



CALIFORNIA
ASSOCIATION
OF REALTORS®

## SHORT SALE ADDENDUM
### (C.A.R. Form SSA, 11/07)

This is an addendum to the ☒ California Residential Purchase Agreement, ☐ Counter Offer, ☐ Other _____
_____ ("Agreement"), dated _____.

on property known as _____9060 Stockhorse Lane, Granite Bay  CA  95746_____
("Property"), between _____Nadar N. Mobini, Fahimeh F. Bozorgzad_____
("Buyer") and _____
("Seller")

**A.  SHORT SALE APPROVAL.**  This Agreement is contingent upon Seller's receipt of written consent from all existing secured lenders and lienholders ("Short-Sale Lenders"), no later than 5:00 P.M. on ___9-20-08___ (date) ("Short-Sale Contingency Date"), to reduce their respective loan balances by an amount sufficient to permit the proceeds from the sale of the Property to pay the existing balances on loans secured by the Property, real property taxes, brokerage commissions, closing costs, and other monetary obligations the Agreement requires Seller to pay at Close Of Escrow (including, but not limited to, escrow charges, title charges, documentary transfer taxes, prorations, retrofit costs and Repairs) without requiring Seller to place any funds into escrow. If Seller fails to give Buyer written notice of all existing Short-Sale Lenders' consent by the Short-Sale Contingency Date, either Seller or Buyer may cancel the Agreement in writing, and Buyer shall be entitled to a return of any deposit. Seller shall reasonably cooperate with existing Short-Sale lenders in the short-sale process.

**B.  TIME PERIODS: BUYER'S DEPOSIT CHECK**
1.  Time periods in the Agreement for inspections, contingencies, covenants, and other obligations: **(i)** shall begin as specified in the Agreement; or **(ii)** (if checked) ☐ shall begin the Day After Seller delivers to Buyer written notice of Short-Sale Lenders' consent.
2.  Buyer's deposit check shall be **(i)** immediately handled as provided in the Agreement; or **(ii)** (if checked) ☐ held uncashed until the Day After Seller delivers to Buyer a written notice of Short-Sale Lenders' consent.

**C.  NO ASSURANCE OF LENDER APPROVAL.**  Buyer and Seller understand that Short-Sale Lenders **(i)** are not obligated to give consent to a short-sale; **(ii)** may require Seller to forward any other offer received; and **(iii)** may give consent to other offers. Additionally, Short-Sale Lenders may require that, in order to obtain their approval for a short sale, some terms of the Agreement, such as the Close of Escrow, be amended or that Seller sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Buyer and Seller do not have to agree to any of Short-Sale Lenders' proposed terms. Buyer, Seller and Brokers do not have control over whether Short-Sale Lenders will consent to a short-sale, or any act, omission, or decision by any Short-Sale Lender in the short-sale process.

**D.  BUYER AND SELLER COSTS.**  Buyer and Seller acknowledge that each may incur costs in connection with rights or obligations under the Agreement. These costs may include, but are not limited to, payments for loan applications, inspections, appraisals, and other reports. Such costs will be the sole responsibility of the party incurring them, if Short-Sale Lenders do not consent to the transaction or either party cancels pursuant to the Agreement.

**E.  OTHER OFFERS.**  Unless otherwise agreed in writing, Seller may continue to market the Property despite acceptance of Buyer's offer, and to present to Short-Sale Lender(s) any additional offers that are received on the Property.

**F.  CREDIT, LEGAL AND TAX ADVICE.**  Seller is informed that a short-sale may have credit or legal consequences and may result in taxable income to Seller. **Seller is advised to seek advice from an attorney, certified public accountant or other expert regarding such potential consequences of a short-sale.**

**By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a copy of this Short Sale Addendum.**

Date _June 2, 2008_                                         Date _June 1, 2008_

Buyer _Nadar Moshiri_                                      Seller _____
_Nadar N. Mobini_

Buyer _signature_                                          Seller _____
_Fahimeh F. Bozorgzad_

The copyright laws of the United States (TITLE 17 U.S. Code) forbid the unauthorized reproduction of this form by any means, including facsimile or computerized formats. Copyright © 2007-2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

SSA 11/07 (PAGE 1 OF 1)          **SHORT SALE ADDENDUM (SSA PAGE 1 OF 1)**

Agent: Jane Dekelaita          Phone: (916) 813 - 1100    Fax:          Prepared using WINForms® software
Broker: Coldwell Banker Northern California 2270 Douglas Blvd. #120 Roseville, CA  95661

SEP 08 2008 18:34 FR LYNN PINI          916 791 6213  TO 7882051                    P.01/01



September 8, 2008


Fahimeh S. Bozorgzad
2718 Milstad Way
ROSEVILLE,CA 95661

Re:  Real Estate Loan Approval for Application # 6778160991

Dear Fahimeh S. Bozorgzad,

Congratulations!  Your real estate loan has been approved based on the following terms:

|  |  |  |  |
|---|---|---|---|
| Property Address: | TBD | | |
| | ROSEVILLE, CA, 95747 | | |
| Loan Amount:  $ 417,000 | | Term:  30 Years | |
| Fixed Interest Rate:  N/A % | | Initial Variable Interest Rate 5.25  % | |

☒  Your interest rate and points are not locked.  If the rates increase, your loan may require re-evaluation when your rate and points are set.  If the rates decrease, you are eligible for the lower rates.  You may also decide to change from a fixed interest rate to a variable interest rate or from a variable interest rate to a fixed interest rate.

☐  Your interest rate (fixed rate) or initial interest rate (variable rate) shown above is locked effective (enter rate lock start date), based on the terms included in your Interest Rate Agreement and will expire on (enter rate lock expiration date).  This loan must close and disburse by this expiration date.

This approval is conditioned upon receipt of the requested items not received at the time of loan application and a satisfactory information concerning the property.  For example, we will need confirmation of property value, hazard/flood insurance (as applicable) and an acceptable title report.  You will receive a commitment letter and addendum listing specific loan terms and any outstanding documentation requirements directly from our processing center.  The approval is effective through November 8, 2008, provided that there is no adverse change in any financial, employment or marital status or the condition of the property.

If your loan does not fund and disburse by the earlier of the lock expiration or approval expiration date, we may re-evaluate your loan approval and may require additional information and/or change the terms of the loan.

We remain committed to exceeding the level of service you expect and deserve and sincerely appreciate your interest in the products that Bank of America offers.

Sincerely,

Lynn Pini Tibbetts
(916) 300-0667
lynn.a.pini@bankofamerica.com



FAHIMEH F. BOZORGZAD
(916) 788-2051
2718 MILSTEAD WAY
ROSEVILLE, CA. 95661

BRIDALVEIL FALLS

3665
11-35/1210
48

DATE June 23-08

PAY TO THE
ORDER OF __Little Company__ | $ 5000.00

_Five Thousand_ _____ DOLLARS

Bank of America

Tracy
111 W 10th St.
Tracy, CA
209.846.0044

Customer Since
1994

gobo stockhouse CA

FOR __Deposit for Purchase__

⑈:121000358⑈:3665⑈00.48200 28431⑈

 **Bank of America**



Statement Date: July 15, 2008

Premier Banking Service & Support
Call: 1.800.621.1236

Written Inquiries
Bank of America
Tracy Branch
PO Box 37176
San Francisco, CA 94137-0001

CI 07/22 1 0000 590 0200        349 006239 H@01 AT 0.346

FAHIMEH F BOZORGZAD
2718 MILSTEAD WAY
ROSEVILLE   CA   95661-4092

Customer since 1994
Bank of America appreciates your
business and we enjoy serving you.

Our free Online Banking service allows you to check balances, track account activity, pay bills and more. With Online Banking you can also view up to 18 months of this statement online and even turn off delivery of your paper statement. Enroll at www.bankofamerica.com.

## ☐ Summary of Your Deposit Accounts

| Account | Account Number | Your Balance |
|---|---|---|
| Prima Interest Checking | ▓▓▓▓ | $ 15,432.41 |
| Cash Maximizer | ▓▓▓▓ | 42,000.15 |
| 9 Mo Risk Free CD | ▓▓▓▓ | 100,309.64 |
| | | 100,309.64 |
| 11 Mo Risk Free CD | ▓▓▓▓ | 23,884.99 |
| Total Balances | | $ 281,936.83 |

*Combined balances in these accounts may be used to eliminate monthly checking account service charges.

## ☐ Bank of America News

As a Bank of America customer, you can receive free admission to over 70 museums nationwide the first weekend of every month with Museums on Us® . Just present your Bank of America check, credit or ATM card, along with your photo ID at participating museums. To learn more and to sign up for monthly email or text reminders visit bankofamerica.com/artsonus.

## ☐ Your Prima Interest Checking Account

Account Number: 00482-07893
Statement Period: June 13 through July 15, 2008

| | |
|---|---|
| Beginning Balance on 06/13/08 | $14,844.08 |
| Total Deposits | + 8,934.00 |
| Total Checks, Withdrawals, Transfers, Account Fees | - 8,346.34 |
| Interest Paid | + .67 |
| Ending Balance | $15,432.41 |

| | |
|---|---|
| Annual Percentage Yield earned this period | 0.05% |
| Interest paid year-to-date | $2.56 |
| Number of ATM withdrawals and transfers | 0 |
| Number of purchase transactions | 1 |
| Number of 24 Hour Customer Service Calls | |
| Self-Service | 0 |
| Assisted | 0 |

## ☐ Branch/ATM Deposits

| | Number | Date Posted | Amount |
|---|---|---|---|
| | | 06/30 | $8,934.00 |

Continued on next page

California



**WaMu**®

Home Loans

Washington Mutual
7255 Baymeadows Way
Jacksonville, FL 32256

December 07, 2008

*Trustee Sale*
*11/10/08*

LM753

*EXHIBIT B*

Jo A Vassallo
9060 Stockhorse Ln
Granite Bay, CA 95746-7165

WE ARE A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT,
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

WE HAVE TOLD A CREDIT BUREAU ABOUT A LATE PAYMENT, MISSED PAYMENT
OR OTHER DEFAULT ON YOUR ACCOUNT. THIS INFORMATION MAY BE
REFLECTED IN YOUR CREDIT REPORT.

IF YOU ARE IN BANKRUPTCY OR YOU HAVE BEEN DISCHARGED IN BANKRUPTCY,
THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED
AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS
OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.

RE: Loan Number: 0667166052

Dear Jo A Vassallo and :

At Washington Mutual, we are committed to keeping you informed about
issues that affect your account. That is why we are writing today
with important information about your request for a workout solution
on the home loan referenced above.

Unfortunately, after reviewing your situation, we have determined
that we are canceling your request for a loan workout because
Package was incomplete..

As a result of this decision, we have no choice but to continue with
the normal default servicing activities commenced on this loan
before your workout request was submitted.

If you have any questions or if your situation changes, please call us
toll free at 1-866-926-8937 between 8 a.m. and 5 p.m., Eastern Time.

Sincerely,


Loan Workout Specialist
Loss Mitigation Department
Washington Mutual Bank

LA-LM753-012-AB@.4373.021306

♿ Equal Housing Lender



Home Loans

Washington Mutual
7255 Baymeadows Way
Jacksonville, FL 32256

LM753

Page 2
Loan Number: 0667166052

Our credit decision was based in whole or in part on information
obtained in a report from the consumer reporting agency listed
below. You have a right under the Fair Credit Reporting Act to know
the information contained in your credit file at the consumer
reporting agency. The reporting agency played no part in our
decision and is unable to supply specific reasons why we have denied
credit to you. You also have a right to a free copy of your report
from the reporting agency, if you request it no later than 60 days
after you receive this notice. In addition, if you find that any
information contained in the report you receive is inaccurate or
incomplete, you have the right to dispute the matter with the
reporting agency.

Equifax Credit Information Services, Inc.
P.O. Box 105851
Atlanta, GA 30348
Toll-free number 1-800-685-1111

The Federal Equal Credit Opportunity Act prohibits creditors from
discriminating against credit applicants on the basis of color,
religion, national origin, sex, marital status, age (provided that
the applicant has the capacity to enter into a binding contract);
because all or part of the applicant's income derives from any
public assistance program; or because the applicant has in good
faith exercised any right under the Consumer Credit Protection Act.
The federal agency that administers compliance with this law
concerning Washington Mutual Bank is the Office of Thrift Supervision
Regional Director, P.O. Box 7165, San Francisco, California 94120.

LA-LM753-012-AB@.4373.021306

 **WaMu®**

PAYOFF STATEMENT                          XP611
04-06-09

TO:                                      RE: Loan Number: 0667166052
   Jo A Vassallo                        Client Number: 156-R
                            Jo A Vassallo

   9060 Stockhorse Ln
   Granite Bay CA 95746

                                9060 Stockhorse Ln
                                Granite Bay CA 95746

Loan Type - Conventional
*************************************************************************
PAYOFF FIGURES MUST BE VERIFIED WITHIN 24 HOURS PRIOR TO PAYOFF.
If we receive an insufficient amount to pay off the loan, we must
receive funds to cover the deficiency by 3:00 ET on the same
business day. If we do not receive the funds to cover the
deficiency by 3:00 ET on the same business day, we will return the
payoff funds in the same manner as they were remitted. Interest
will continue to accrue, late charges may be incurred, and other
activity or transactions may take place on the loan until sufficient
funds are received to pay the loan in full.
****PLEASE CALL TOLL FREE 1-866-926-8937 TO VERIFY PAYOFF FIGURES****

AMOUNTS DUE
A. The next payment due date is 12-01-07. Payment of the following
   amounts are required to pay the loan in full on 04-06-09:
   Current Total Unpaid Principal Balance      $      863,913.82
   Interest to 04-06-09                        $       61,785.60
   Escrow/Impound Overdraft                    $       16,911.83
   Recoverable Balance                         $        6,113.79
   Late Charges                                $        2,371.48
   Recording Cost                              $            7.00*
   Total amount to Pay Loan in Full on 04-06-09 $     951,103.52

B. The following amounts are additional fees and costs that are due
   relating to this loan:
   Other Outstanding Fees                      $          163.40
   Payoff Statement Fee                        $           30.00**
   Reconveyance Fee                            $             .00
   Trustee Fee                                 $             .00
TOTAL AMOUNT DUE                               $      951,296.92
  *Please exclude the Recording Cost if the transaction involves a
  Consolidation, Extension and Modification Agreement or the
  sale or refinance of a cooperative unit.
  **Payoff Statement Fee is due from the requesting person or entity.
If not paid in full by 04-06-09, add a per diem of $ 118.34.

LA-XP611-059-KZ1.5051.042406


PAYOFF FIGURES MUST BE VERIFIED 24 HOURS PRIOR TO PAYOFF. ADDITIONAL
AMOUNTS MAY BE INCURRED THAT CHANGE THE PAYOFF AMOUNT.
The total amount necessary to pay off the loan is subject to final
verification from the note holder. Washington Mutual reserves the
right to adjust these figures at any time for any reason. This
includes, but is not limited to, an error in calculating the payoff
amount, dishonored payments, disbursements with escrow accounts,
advances and adjustments made from the date of this Statement to
the crediting of the payoff funds. You may not rely on the "Total
Amount" due shown unless you confirm those amounts by contacting
Washington Mutual toll free at 1-866-926-8937.

The per diem interest amount applies to conventional and VA loans
and is valid only until the earlier of 04-06-09 or, if the loan is
an adjustable rate loan, the next interest rate change date. This
per diem interest amount does not apply to FHA loans, other than FHA
loans originated in Illinois on or after January 1, 1986. Failure to
pay all other FHA loans in full on a monthly payment due date will
result in another month's interest accruing and being due on the loan
at payoff. Interest will be charged to, but not including, the day
payoff funds are received. PAYOFF FUNDS RECEIVED ON A MONDAY MUST
INCLUDE INTEREST FOR THE PRECEDING SATURDAY AND SUNDAY. A late
charge of $ 289.76 will be assessed and added to the total amount
due if any payment is not received within 15 days after the due date.

ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK, CERTIFIED FUNDS, OR
WIRE TRANSFER. FUNDS MUST BE RECEIVED BY 3:00 ET.

CHECK REMITTANCE:                    WIRE REMITTANCE:
Washington Mutual                    Washington Mutual
Attn: Payoff Unit, STE 156           ABA Number: 3222-7162-7
7255 Baymeadows Way                  Beneficiary: Washington Mutual Bank
Jacksonville, FL 32256               Beneficiary Acct: 0950151375
                                     OBI Text: Jo A Vassallo
                                     Loan Payoff Number: 0667166052

-Include borrower's name, loan number and property address on check.
-Wire must be formatted exactly as shown above. Do not use Bank to
 Bank Information (BBI). Remitter's name, phone number, and fax
 number must be referenced on the wire.

LA-XP611-059-KZ1.5051.042406

Case 09-02501    Filed 08/03/09    Doc 1

 **WaMu®**

Payoff Statement (Continued)                     Page 3 of 4
04-06-09                                          Loan Number 0667166052

PAYOFF REVERSALS
Any requests to reverse a payoff must be submitted in writing and
sent by fax to 469-948-9510. Remitter will be held liable for costs
incurred for a payoff reversal due to a remitter error.

ESCROW/IMPOUND ACCOUNT
If property taxes, insurance, or other items are paid through an
account, WaMu will continue to pay those items as scheduled and
the borrower remains obligated for any escrow/impound overdraft until
the loan is paid in full. Any remaining escrow/impound balance will
be released after the payoff date.

MONTHLY HOME LOAN PAYMENTS
DO NOT PLACE A STOP PAYMENT ON ANY MONTHLY PAYMENT. THIS  COULD RESULT
IN A DELAY IN THE LOAN PAYOFF AND ADDITIONAL INTEREST AND OTHER
CHARGES. Any overpayments will be refunded to the borrower after the
loan is paid in full.

CANCELLATION OF AUTOMATIC PAYMENTS
The borrower must cancel any automatic payment arrangement. WaMu's
Auto Pay service will continue to withdraw payments unless
cancellation is requested and received by WaMu at least 10 business
days before the scheduled withdrawal date. Cancellation of a third
party is the responsibility of the borrower.

LIEN RELEASE
The lien release or reconveyance of the security instrument will be
mailed in accordance with applicable laws and the loan documents.
The lien will not be released or reconveyed if any funds previously
received are rejected by the bank upon which the funds are drawn or
an insufficient amount is received to pay the loan in full as shown
in Section A on page 1.

LA-XP612-012-KZ1.5052.042406



Case 09-02501    Filed 08/03/09    Doc 1

XP612

Payoff Statement (Continued)                    Page 4 of 4
04-06-09                                         Loan Number 0667166052

Closing agents: To expedite the lien release or reconveyance process,
provide a copy of Schedule B or the recorded security instrument for
the loan being paid in full. Direct lien release questions and
correspondence to the Lien Release Department, 7255 Baymeadows Way,
JAXF1020, Jacksonville, FL 32256 or fax to 904-486-2932.

IF YOU ARE PAYING OFF A LOAN ON A COOPERATIVE UNIT
Fax a request for the collateral documents to WaMu's Co-op Unit at
904-462-3642. Allow 30 days from the date of request for the delivery
of the collateral documents.

IF YOU ARE REQUESTING A NEW YORK CONSOLIDATION, EXTENSION AND
MODIFICATION AGREEMENT
Call WaMu's Customer Care department toll free at 1-866-926-8937 or
send your written request to WaMu's Assumption/Modification/MECA
Department by e-mail to nyconreqmi@wamu.net or fax to 843-673-3902.

FHA LOANS: FHA DISCLOSURE
Unlike principal (which is paid in the current month's mortgage
payment), interest earned by the lender in the previous month must
be paid in the next month's mortgage payment since the interest must
be earned by the lender before it is owed by the borrower. The
interest being charged to the next installment due date with regard
to prepayments is in fact interest that was earned the previous
month and has yet to be paid by the borrower.

HOMESAVER LOANS: You must contact Dyck & O'Neal, Inc., Attention: HSA
Coordinator, 15301 Spectrum Drive, Suite 450, Addison, TX 75001,
1-800-418-9401 to obtain a payoff statement.

ADDRESS CHANGE
Provide the borrower's new mailing address for remittance of any
escrow/impound overage, lien release documents and year end tax
documents as applicable.

LA-XP612-012-KZ1.5052.042406

๚ **WaMu**

Washington Mutual
Customer Service: Toll free 1.866.926.8937 Se habla español
TDD: Dial 7-1-1 for relay assistance

Exhibit C

#BWNCLNN
#2906679166905291#
20090119 A 0-0
JO A VASSALLO
9060 STOCKHORSE LN
GRANITE BAY  CA 95746-7165                          29905

|||.||.||.||.|.||.||.||.|.||.|..|.||.||.||.||.|.||.|..|||.||.||.|.

CLR0499B 7760 0001 J7G    07 090119 PAGE 00001 OF 00001    00029905

☐ CORRECTED (if checked)

| LENDER'S name, street address, city, state, ZIP code, and telephone no.<br><br>JPMorgan Chase Bank, N.A.,<br><br>formerly WaMu (Home Loans)<br>P.O. Box 100576<br>Florence, SC  29502-0576<br>(866) 926-8937 | | OMB No. 1545-0877<br><br>**2008**<br><br>Form 1099-A | **Acquisition or**<br>**Abandonment of**<br>**Secured Property** |
|---|---|---|---|
| LENDER'S federal identification number<br>13-4994650 | BORROWER'S identification number<br>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 | 1 Date of lender's acquisition or knowledge of abandonment<br>11/10/2008 | 2 Balance of principal outstanding<br>$        863,913.82 | Copy B<br>For Borrower<br>This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| BORROWER'S name<br>JO A VASSALLO | | 3 | 4 Fair market value of property |
| Street address (including apt. no.)<br><br>9060 STOCKHORSE LN | | | $        921,896.05 |
| City, state, and ZIP code<br>GRANITE BAY, CA  95746-7165 | | 5 Was borrower personally liable for repayment of the debt?<br>☒ Yes    ☐ No | |
| Account number (see instructions)<br>0667166052 | | 6 Description of property<br><br>9060 STOCKHORSE LN GRANITE B CA 95746 | |

Case 09-02501   Filed 08/03/09   Doc 1

Contact | Sitemap | Search | Deutsch

Home   Our Company   Investor Relations   Press   Social Responsibility   Careers

Full text search

You are here: Home > Our Company > Global Network > Location Finder

Headlines
Awards
Identity and Mission
Brand
Values
Facts and Figures
Management
Products and Services
Global Network
Location Finder
History

## Location Finder

Find more details about our locations worldwide via the map or the list below.

*EXHIBIT C*
*Page 2*

Search

Country

A B C D E F G H I J K L M N P Q R S T U V

Ukraine
United Arab Emirates -> look under "Abu Dhabi" or "Dubai"
United Kingdom

**Deutsche Bank USA**

Having first established a presence in the Americas in the 19th century, the Bank began independent operations in the U.S. in 1978, opening its first North American branch in New York City. Deutsche Bank is one of the largest foreign-based employers in New York City and the only investment bank physically located on Wall Street.

Local Site of Deutsche Bank in the USA

City

C D F G H I M N O P T U W

California

Branch

Orange County - Santa Ana, CA - 1761 E. Saint Andrew Place (CA 92...

Search result

Corporate Clients

House Address          1761 E. Saint Andrew Place
                       CA 92705-4934 Orange County - Santa Ana, CA
                       USA

Phone Number           +1 (714) 247-6000

Fax Number             +1 (714) 247-6009

Location facilities     No retail banking
                        No ATM

Additional Information  Wheelchair access
                        Parking available

Imprint | Legal Resources | Accessibility | Last Update: March 4, 2009
Copyright © 2009 Deutsche Bank AG, Frankfurt am Main

A A A

http://tools.deutsche-bank.de/cc/locationsfinder/en/welcome2.do?country=USA

6/29/2009